**UNITED STATES of America**

v.

**Glen NORRIS, Defendant.**

**No. 97 CR 705–01.**

United States District Court,
E.D. New York.

April 27, 2001.

Loretta E. Lynch, United States Attorney, Eastern District of New York (Nikki Kowalski, Assistant United States Attorney, of counsel), Brooklyn, NY, for Plaintiff.

Mildred Whalen, Brooklyn, NY, for Defendant.

## AMENDED MEMORANDUM AND ORDER

NICKERSON, District Judge.

This Memorandum and Order amends and augments the court's Memorandum and Order dated February 1, 2001.

In this case defendant Glen Norris pleaded guilty to Count One of the indictment charging that between June 17 and June 23, 1999, he conspired with others to distribute and possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). A second count remains pending. Under 21 U.S.C. § 841(b)(1)(A) the penalty is a term of imprisonment that "may not be less than ten years or more than life."

## I

The Probation Department's presentence report sets forth a summary of the alleged "offense conduct" as follows. On June 21, 1999, Norris agreed to buy from an informant six kilograms of cocaine at $18,000 per kilogram. On June 25, 1999, Norris and two of his alleged partners, Irvin Hall and Michael Mitchell, met with the informant in the kitchen in Norris's house. The informant and Hall counted $90,000 in cash on the kitchen table. Then the informant departed, pretending he would return with cocaine.

When Drug Enforcement Administration agents returned they arrested Norris, Hall, and Mitchell and seized the $90,000 on the table and another $25,000 at the foot of the table. In response to questions by the agents, Norris admitted there was a weapon in the house and led them to a loaded weapon on a shelf of a dresser inside a bedroom closet on the second floor.

Hall made post-arrest statements to the agents to the effect that on prior occasions he had assisted Norris by counting money for cocaine purchases. He said that once he counted about $60,000, a second time about $90,000, and a third time about $100,000. These incidents, not alleged in the indictment, were said to have occurred some time prior to the June dates stated in the indictment.

The probation department added the $115,000 seized in Norris's residence to the total $250,000 that Hall said he had previously counted. The probation report concluded that the entire amount of $365,000 was attributable to Norris and was sufficient to buy 20.27 kilograms of cocaine at $18,000 a kilogram.

The Guidelines Base Offense Level for conviction of a crime involving a range of at least 5 kilograms and less than 15 kilograms of cocaine is 32. After subtracting three levels for Norris's acceptance of responsibility by pleading guilty the offense level would be 29, calling for a guideline sentence of 97 to 120 months imprisonment. Norris had a record of three prior convictions for harassment of his estranged wife, giving him a Criminal History Category of II. The statutory sentence could be no less than 121 months.

The Probation Department added two levels, raising the Base Offense Level to 34, based on 20.27 kilograms of cocaine, the amount that the presentence report recited Norris conspired to distribute. The figure represents 14.7 kilograms attributed to the amount of cocaine allegedly purchasable by the money counted by Hall, plus the 6 kilograms allegedly involved on the June dates stated in the indictment.

The Probation Department added two further levels pursuant to Guideline 2D1.1(b)(1) because Norris possessed a firearm allegedly in connection with the crime. The Probation Department also added an additional two levels because it found under Guideline 3B1.1(c) that Norris had supervised the criminal activity of Hall. After subtracting three levels for Norris's acceptance of responsibility, the Probation Department found the resulting Offense Level to be level 35, calling for imprisonment of 188 to 235 months.

The appropriate sentence turns on the effect of the Supreme Court decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

## II

In his allocution pleading guilty to the indictment Norris admitted to dealing in cocaine on June 17 and June 23, 1999. But he did not admit to the alleged earlier counting of money to buy cocaine. Nor did he admit to supervising Hall or to

possessing the weapon in connection with the transaction charged in the indictment.

All the critical facts recited in the Probation Report, other than the facts admitted by Norris in his plea of guilty, were supplied in statements by the informant, Hall, or the agents.

The government contends that the facts supporting the three increases in the sentence were not proof of "elements" of the crime charged but were mere "sentencing factors," allegedly not required by the Constitution of the United States to be found by a jury on proof of guilt beyond a reasonable doubt. According to the government all three "sentencing factors" could properly be found by a judge by a mere preponderance of the evidence.

■ In *Apprendi* the Supreme Court held that the Fourteenth and Sixth Amendments to the Constitution of the United States entitle a criminal defendant to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." 120 S.Ct. at 2356. As the Court put it, "[t]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.*

Before a New Jersey trial judge Apprendi pleaded guilty to two counts of the second degree offense of possession of a firearm for an unlawful purpose, each carrying a penalty range of five to a maximum of ten years, and to a third degree offense carrying a penalty range of three to five years. None of the three counts alleged that Apprendi had possessed the firearms with a "purpose to intimidate" because of "race."

Apprendi's plea agreement with the State provided that the sentence on the third degree offense would run concurrently with the sentences on the other two counts. In the agreement the State reserved the right to request the court to impose a higher "enhanced" sentence in excess of the ten years maximum provided by the New Jersey statute for the count charging the firing of several bullets into the home of an African–American family that had recently moved into a previously all-white neighborhood.

The State sought to show that under New Jersey's so-called "hate crime" law the State could establish by a preponderance of the evidence, enabling the State to obtain a sentence above the ten year maximum for the crime of shooting into the home, that Apprendi had committed the offense because of racial bias and a purpose to intimidate. Apprendi reserved the right to challenge the imposition of any such increase on the ground that it would violate his rights guaranteed by the United States Constitution.

The trial judge took testimony at an evidentiary hearing as to Apprendi's "purpose" for the shooting, and then found "by a preponderance of the evidence" that Apprendi had been "motivated by racial bias" with a "purpose to intimidate." The court increased Apprendi's sentence to twelve years on the count alleging the shooting, two years more than the maximum for that count.

Over dissent the Appellate Division of the Superior Court of New Jersey affirmed, as did a divided New Jersey Supreme Court.

### III

The United States Supreme Court reversed. The Court said that at stake in the case were "constitutional protections of surpassing importance: the proscription of any deprivation of liberty without 'due process of law,' Amdt. 14," and without the

guarantee of the Sixth Amendment that " '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury.' " *Id.* 2355. The court added that, taken together, these rights "indisputably" entitled a criminal defendant to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt," and that the "Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* 2355–56.

■ In discussing whether a fact is a part of the "elements" of a crime or a mere "sentencing factor," the *Apprendi* court said that "labels" do not afford an "acceptable answer," and that "[d]espite what appears to us the clear 'elemental' nature of the factor here, the relevant inquiry is not one of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id.* at 2365.

## IV

■ In the present case, where there has been no jury and no jury verdict, the facts to establish the elements charged in the indictment were contained in Norris's plea of guilty. That plea was the functional equivalent of a guilty verdict on the charges. A plea of guilty is more than a confession admitting that the accused did various acts, "it is itself a conviction." *Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927); *Boykin v. Alabama,* 395 U.S. 238, 241, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969).

■ Norris neither pleaded to nor admitted any of the facts that the government says justify an increased punishment based on findings to be made by a judge on alleged facts not admitted and not proven before a jury beyond a reasonable doubt. It follows that the defendant may not be exposed "to a greater punishment than that authorized" by the facts stated in the plea of guilty.

■ To ascertain the penalty authorized by the facts to which Norris pleaded the court must look to 21 U.S.C. § 841(b)(1)(A). Under that section for a drug crime involving five kilograms of cocaine the penalty is ten years to "not more" than life imprisonment.

That does not mean that this court is or would be authorized to impose a sentence of up to life imprisonment. The United States Sentencing Commission has promulgated Guideline provisions, that is, laws, binding on a federal district court, which may not disregard those laws. See 18 U.S.C. § 3742. Without the "sentencing factors" adopted by the Probation Department but adjusting the sentence for Norris's acceptance of responsibility for the crime charged, his sentence would be 120 months.

The government argues that various circuit courts have said that *Apprendi* does not apply where a judge has increased the range of punishment based on the judge's own findings by a preponderance of the evidence, provided the sentence imposed does not exceed the maximum that Congress fixed by statute for the crime, here life imprisonment. See, e.g., *United States v. Scheele,* 231 F.3d 492, 497, n. 2, (9th Cir.2000); *United States v. Meshack,* 225 F.3d 556, 576 (5th Cir.2000); *United States v. Williams,* 235 F.3d 858, 862 (3d Cir.2000); *United States v. Nealy,* 232 F.3d 825, 829, n. 3 (11th Cir.2000); *United States v. Doggett,* 230 F.3d 160, 165 (5th Cir.2000); *Talbott v. Indiana,* 226 F.3d 866, 869 (7th Cir.2000). See also *United*

*States v. Garcia,* 240 F.3d 180, 183 (2d Cir.2001), and *United States v. Breen,* 243 F.3d 591, 599 (2d Cir.2001).

If those decisions accurately state what the *Apprendi* opinion means, then the opinion is a dead letter in most substantial narcotics cases in the federal courts. There is no greater sentence than life imprisonment for a defendant dealing in five kilograms of cocaine or one kilogram of heroin.

If the court were to follow those circuit court decisions and find by a preponderance of the evidence that the "sentencing factors" not admitted in the plea of guilty should apply to increase the sentence, the court would be required by the Guidelines to impose a sentence of 188 to 235 months almost doubling the maximum time of incarceration. In the opinion of this court, *Apprendi,* fairly read, does not countenance the violation of Apprendi's Constitutional rights.

Moreover, since the Supreme Court handed down *Apprendi* it has granted certiorari in some forty cases, twenty six of them federal drug cases in which the circuit courts approved Guideline sentence increases based not on jury verdicts but on a judge's findings by a preponderance of the evidence. The Supreme Court vacated the circuit court judgments, and remanded for further consideration in the light of *Apprendi.*

The Supreme Court's decisions making these remands indicated clearly that the reasoning of the *Apprendi* opinion is not to be restricted to instances where the sentence enhancement will cause a sentence to exceed the statutory maximum. In many of the drug cases remanded the judges imposed sentences that did not exceed the maximum fixed in the statute.

A representative sample of the twenty-six drug cases remanded includes cases where the quantity of drugs, the defendant's managerial role in a conspiracy, or possession of a firearm were "sentencing factors" found by a district judge by a preponderance of the evidence. *See, e.g., United States v. Thomas,* 204 F.3d 381 (2d Cir.2000), *cert. granted,* —— U.S. ——, 121 S.Ct. 756, 148 L.Ed.2d 659 (2001); *United States v. Hardin,* 209 F.3d 652 (7th Cir. 2000), *cert. granted,* —— U.S. ——, 121 S.Ct. 1071, 148 L.Ed.2d 948 (2001); *United States v. Valensia,* 222 F.3d 1173 (9th Cir. 2000), *cert. granted,* —— U.S. ——, 121 S.Ct. 1222, 149 L.Ed.2d 133 (2001); *United States v. Brown,* 217 F.3d 247 (5th Cir. 2000), *cert. granted,* —— U.S. ——, 121 S.Ct. 1072, 148 L.Ed.2d 950 (2001); *United States v. Jackson,* 213 F.3d 1269 (10th Cir.2000), *cert. granted,* —— U.S. ——, 121 S.Ct. 621, 148 L.Ed.2d 531 (2000); *United States v. Hester,* 199 F.3d 1287 (11th Cir. 2000), *cert. granted,* —— U.S. ——, 121 S.Ct. 336, 148 L.Ed.2d 270 (2000); *United States v. Steyskal,* 221 F.3d 1345 (8th Cir. 2000), *cert. granted,* —— U.S. ——, 121 S.Ct. 852, 148 L.Ed.2d 767 (2001).

In this court's opinion the circuit court decisions take out of context the language in *Apprendi* that any fact "that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 120 S.Ct. at 2363 (emphasis supplied). Plainly that is not the only circumstance where an increase in penalty must be submitted to a jury.

*Apprendi* was discussing a state case that had no guideline system such as that in current federal law. New Jersey could have adopted a similar guideline system. Instead, the state legislature chose to enact the "hate crime" law providing for an "extended term" of the sentence for firing a gun if the judge found "by a preponderance of the evidence" that the defendant

had committed the underlying crime of shooting at the house motivated by racial bias and to intimidate. The trial court found that Apprendi was so motivated and sentenced him to twelve years on that count, two more years than the maximum for the underlying crime of shooting.

The enhancement in the New Jersey "hate crime" statute is comparable to the Federal Guidelines for threatening or harassing communications (Guideline 2A.6.1) and for threatening to assault with a firearm. (Guideline 2A.2.2). Like a district judge following the Guideline enhancements, the trial judge in New Jersey could increase the sentence based on the judge's own findings by a preponderance of the evidence.

In both the State case of *Apprendi* and the federal drug cases defendant is deprived of the right to due process of law and the right to a speedy and public trial by an impartial jury. The deprivation is the same in the state cases as it is in the federal cases even though the deprivation is accomplished by a statute in the state cases and in the federal cases by "Guidelines" which are binding law.

The fact that a separate State statute causes the eventual sentence for an underlying crime to exceed the maximum penalty for that crime has no bearing on the comparable deprivation of the Constitutional rights of the defendants in both the federal and state cases.

A defendant's Constitutional rights would not be so violated by a sentencing guidelines system in which all facts exposing the defendant to a particular sentence range must be included in the indictment and found by a jury to have been proven beyond a reasonable doubt. No doubt such a system would be inconvenient. But compromises for the sake of convenience should not be made at the expense of

depriving Norris of his rights guaranteed by the United States Constitution.

The court is prepared to sentence Norris on May 11, 2001 at 11:00 A.M.

So ordered.