UNITED STATES of America,
Appellee,

v.

Jorge GUEVARA, aka "Santa,"
Defendant–Appellant.

Docket No. 00–1133.

United States Court of Appeals,
Second Circuit.

Argued Nov. 17, 2000.

Decided Dec. 18, 2001.

Timothy J. Coleman, Assistant United States Attorney, New York, NY (Mary Jo

White, United States Attorney for the Southern District of New York, Christine H. Chung, Assistant United States Attorney, on the brief), for Appellee.

Richard D. Willstatter, Green & Willstatter, White Plains, NY, for Defendant–Appellant.

Before: JACOBS, CALABRESI, Circuit Judges, and RAKOFF, District Judge.*

JACOBS, Circuit Judge.

Jorge Guevara appeals from the judgment of conviction and sentence entered in the United States District Court for the Southern District of New York (Martin, J.) after a jury trial. Guevara challenges his conviction on the following grounds: (1) under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), his due process and Sixth Amendment rights were violated when he was sentenced to a mandatory minimum 240 month term of imprisonment under 21 U.S.C. § 841(b)(1)(A) on the basis of a judge's preponderance finding that more than one kilogram of heroin was involved in the conspiracy rather than by a jury determination of drug quantity beyond a reasonable doubt; (2) *Apprendi* aside, there was insufficient evidence to support the district judge's determination that the conspiracy involved more than one kilogram of heroin; (3) the district court abused its discretion and denied Guevara the right to present a defense by refusing to receive in evidence certain tape recordings and transcripts that are allegedly exculpatory; and (4) Guevara was denied his Sixth Amendment right to effective assistance of counsel when his lawyer stipulated to the accuracy of certain English language transcripts before Guevara had

listened to the Spanish language audiotapes.

For the reasons set forth herein, we conclude that Guevara's sentence of 240 months violated *Apprendi.* Applying plain error review pursuant to Fed.R.Crim.P. 52(b), we conclude that the district court committed error that was plain, that affected Guevara's substantial rights, and that seriously affected the fairness and the public reputation of judicial proceedings.

As to the other grounds of appeal, we conclude that (1) the evidence was sufficient to support a finding that more than one kilogram of heroin was involved in the offense; (2) the district court exercised proper discretion in excluding certain evidence; and (3) Guevara's counsel was not constitutionally ineffective.

Accordingly, we vacate the sentence and remand for resentencing consistent with this opinion.

**I**

Jorge Guevara was convicted by the jury of conspiring to distribute heroin in violation of 21 U.S.C. §§ 846 and 841. The indictment handed down against Guevara charged him with conspiring with others to "distribute and possess with intent to distribute a controlled substance, to wit, one kilogram and more of mixtures and substances containing a detectable amount of heroin," in violation of Title 21, United States Code, Section 846. Indictment 99CR445. At trial, however, the court instructed the jury, consistent with the law of this Circuit at the time of trial, that "[t]he amount of narcotics alleged to have been distributed or possessed with intent to distribute is not an essential element of the criminal objective. *You need only find*

---

* The Honorable Jed S. Rakoff of the United States District Court for the Southern District of New York, sitting by designation.

that the co-conspirators agreed to distribute, or possess with intent to distribute, *any quantity* of narcotics." Charge to Jury, Trial Transcript at 291 (emphasis added); *see United States v. Thomas,* 204 F.3d 381, 383–84 (2d Cir.), *vacated and remanded for reconsideration,* 531 U.S. 1062, 121 S.Ct. 749, 148 L.Ed.2d 653 (2000). Guevara did not object to the jury instruction at trial and the jury returned a guilty verdict.

The Pre–Sentence Investigation Report ("PSR") prepared by the United States Probation Office in advance of the sentencing hearing recommended—pursuant to the United States Sentencing Guidelines ("Guidelines")—a Criminal History Category of IV (taking into account Guevara's prior felony drug conviction) and a base offense level of 32 (premised on the recommended finding that his "criminal activity involved the distribution of 2,253 grams of heroin"). PSR ¶ 23 (citing U.S. Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(4)). Guevara objected to the PSR on a number grounds that did not include those later raised under *Apprendi.* In adopting the PSR's recommendations, the district judge concluded that there was sufficient evidence at trial to establish that Guevara knew the conspiracy involved at least one kilogram of heroin.

Guevara's Criminal History Category and base offense level resulted in a Sentencing Guideline range ("Guideline range") of 168 to 210 months. The court adopted no departure from that range in either direction. However, the district court

- ruled that because of its finding that the conspiracy involved more than one kilogram of heroin (and that Guevara was a prior drug felon), Guevara was subject to the mandatory minimum

sentence of 240 months under 21 U.S.C. § 841(b)(1)(A)(i); [1]

- ruled that the 240 month mandatory minimum trumped the top of the applicable Guideline range (210 months), *see* U.S.S.G. § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."); and accordingly

- sentenced Guevara to 240 months in prison.

Guevara filed a timely notice of appeal, challenging both his conviction and sentence. The principal question presented in this appeal is whether, under the Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Guevara's due process and Sixth Amendment rights were violated when—based on the judge's finding by a preponderance of the evidence, rather than a jury determination, that more than one kilogram of heroin was involved in the conspiracy—Guevara was sentenced to a mandatory minimum term of imprisonment under 21 U.S.C. § 841(b)(1)(A) that exceeds the highest term of imprisonment to which he would have been sentenced under the Sentencing Guidelines alone, notwithstanding that the sentence did not exceed the 360 month statutory maximum under 21 U.S.C. § 841(b)(1)(C).

## II

In *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the defendant was convicted under a New Jersey statute making it a second-degree offense to possess a firearm for an unlawful purpose, *see* N.J. Stat. Ann.

---

1. For the sake of clarity and easy comparison between statutory minimums and maximums and Guideline ranges, we refer to the length of penalties in months rather than years.

§ 2C:39–4a (West 1995), punishable by a maximum sentence of ten years. The state moved to enhance Apprendi's sentence under New Jersey's "hate crime" statute, which authorized a sentence of ten to twenty years if the trial judge found, by a preponderance of the evidence, that Apprendi "acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." *Apprendi,* 530 U.S at 469, 120 S.Ct. 2348 (quoting N.J.S.A. § 2C:44–3(e)). Having duly found that Apprendi had acted with a biased motive, the trial judge sentenced Apprendi to a term of twelve years.

Apprendi argued that his sentence exceeded by two years the punishment authorized for the crime of which he had been convicted. The Supreme Court held that the sentencing enhancement based on the judge's finding of bias was unconstitutional because:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in [*Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) ]: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."

*Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348 (quoting *Jones,* 526 U.S. at 252–53, 119 S.Ct. 1215 (1999)).

**2.** Issuance of this opinion has been held pending the Court's en banc opinion in *Thomas,*

■ In *United States v. Thomas,* 274 F.3d 655 (2d Cir.2001) (en banc), we joined a majority of circuits to conclude that *Apprendi* applies to the federal narcotics statute, 21 U.S.C. § 841 (2000), which specifies escalating penalties based on drug quantity. Thus, in reverse alphabetical order of subsections:

● Section 841(b)(1)(C), applicable to drug trafficking offenses under § 841(a) involving an indeterminate quantity of drugs, mandates no minimum sentence and authorizes a sentence ranging up to 240 months, or up to 360 months for prior drug felons;

● Section 841(b)(1)(B), applicable to drug trafficking offenses under § 841(a) involving *(inter alia)* at least 100 grams of heroin, mandates a minimum term of 60 months (or 120 months for prior drug felons) and authorizes a sentence ranging up to 480 months (or life for prior drug felons); and

● Section 841(b)(1)(A), applicable to drug trafficking offenses under § 841(a) involving *(inter alia)* at least one kilogram of heroin, mandates a minimum term of 120 months (or 240 months for prior drug felons), and authorizes a sentence of up to life.

■ Therefore, under *Apprendi,* "if the type and quantity of drugs involved in a charged crime may be used to impose a sentence above the statutory maximum for an indeterminate quantity of drugs [21 U.S.C. § 841(b)(1)(C) ], then the type and quantity of drugs is an element of the offense that must be charged in the indictment and submitted to the jury." *Thomas,* 274 F.3d at 659 (collecting cases).[2]

on which this opinion in part depends.

*Apprendi* did not decide whether a defendant convicted of conspiring to commit a drug trafficking offense under § 841(a) involving an indeterminate quantity of drugs can be sentenced to a mandatory minimum under § 841(b)(1)(A) that: (1) falls within the range of penalties authorized under § 841(b)(1)(C), but (2) exceeds the Guideline punishment to which the defendant would otherwise be exposed. The Supreme Court had no reason to consider this issue because *Apprendi,* which was an appeal from the Supreme Court of New Jersey, was of course uninfluenced by any consideration of the federal Sentencing Guidelines.

■ We conclude that, by virtue of *Apprendi,* a statutory mandatory minimum sentence specified in either § 841(b)(1)(A) or § 841(b)(1)(B) cannot mandate a prison sentence that exceeds the highest sentence to which the defendant would otherwise have been exposed (i.e., the top of the federal Guideline range, based on district court findings under the Guidelines, with or without a departure) if the applicability of subsections (A) or (B) depends on a finding of drug quantity not made by the jury.[3]

### A

■ The *Apprendi* inquiry was whether, under the Due Process Clause of the Fourteenth Amendment, a fact that authorizes an increase in the maximum penalty to which a defendant could be sentenced must be found by a jury beyond a reasonable doubt. The Supreme Court held that any fact (other than a prior conviction) authorizing an increase in the defendant's sentence "beyond the prescribed statutory maximum" must be proved by the jury beyond a reasonable doubt and that it is unconstitutional to "remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348.

*Apprendi* arose under New Jersey state law, which has no analog to the federal Sentencing Guidelines. In states without a guideline system, a judge's sentencing discretion is essentially unlimited except by the range of penalties authorized under the criminal statute in question.

■ By contrast, the federal Sentencing Guidelines constitute an overlay of binding law that limits discretion. They were promulgated by the United States Sentencing Commission ("U.S.S.C.") pursuant to law, *see* Sentencing Reform Act of 1984(Act), as amended, 18 U.S.C. § 3551 et seq. (1982 ed. Supp. IV), and 28 U.S.C. §§ 991–998 (1982 ed. Supp. IV), and have "the force and effect of laws." *Apprendi,* 530 U.S. at 523 n. 11, 120 S.Ct. 2348 (Thomas, J., concurring) (quoting *Mistretta v. United States,* 488 U.S. 361, 413, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (Scalia, J., dissenting)); *see also United States v. Martin,* 221 F.3d 52, 58 (1st Cir.2000) (same); *United States v. Muniz,* 49 F.3d 36, 37 (1st Cir.1995) (same); *United States v. Higgins,* 128 F.3d 138, 140 (3d Cir.1997) (same); *United States v. Ming He,* 94 F.3d 782, 788 (2d Cir.1996). At the risk of being obvious, the Guidelines "bind judges and courts in the exercise of their uncontested responsibility to pass sentence in criminal cases." *Mistretta,* 488 U.S. at 391, 109 S.Ct. 647; see also *Stinson v. United States,* 508 U.S. 36, 42, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (quoting *Mistretta* ).

---

**3.** This assumes that the top of the applicable Guideline range is less than the statutory maximum authorized under § 841(b)(1)(C). Should any part of the defendant's Guideline range exceed the statutory maximum of the applicable provision under § 841(b)(1), then the latter becomes the maximum. *See* U.S.S.G. § 5G1.1(a).

 Under the Act, the sentencing court must impose a sentence within the Guideline range absent a finding made as to an aggravating or mitigating circumstance not adequately considered under the Guidelines. *Stinson,* 508 U.S. at 42, 113 S.Ct. 1913 (quoting 18 U.S.C. §§ 3553(a)(4), (b)); U.S.S.G. § 5G1.1(c); *see also* U.S. Sentencing Guidelines Manual, Ch. 1 Pt. A, N. 2 ("Pursuant to the Act, the sentencing court must select a sentence from within the guideline range," so long as the case does not present atypical features warranting a departure.) Commentary found in the Sentencing Guidelines Manual "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson,* 508 U.S. at 38, 113 S.Ct. 1913.

 Because the Guideline range is law that binds the sentencing court, we believe that the maximum sentence justifiable under the Guidelines (if less than the maximum sentence authorized under the applicable penal statute), is the prescribed maximum sentence to which a defendant may be exposed and sentenced. Following *Apprendi* and *Thomas,* therefore, if drug quantity is used to trigger a mandatory minimum sentence that exceeds the top of the Guideline range that the district court would otherwise have calculated (based on the court's factual findings, with or without departures), that quantity must be charged in the indictment and submitted to the jury. *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348; *Thomas,* 274 F.3d at 659–60.

The 240 month sentence was imposed on Guevara solely on the basis of the minimum sentence mandated by § 841(b)(1)(A)(i); the applicability of subsection (A) depended in turn on the district judge's preponderance finding as to drug quantity; and the 240 month sentence exceeded the otherwise applicable range of penalties to which Guevara was exposed by the findings made beyond a reasonable doubt by his jury, i.e., the Guideline range of 168 to 210 months. We conclude therefore that the 240 month sentence was constitutionally impermissible. *See United States v. Ramirez,* 242 F.3d 348, 352 (6th Cir.2001) ("[W]hen a defendant is found guilty of violating 21 U.S.C. § 841(a)(1), he must be sentenced under 21 U.S.C. § 841(b)(1)(C) unless the jury has found beyond a reasonable doubt that the defendant possessed the minimum amounts required by § 841(b)(1)(A) and § 841(b)(1)(B).").

Because Guevara was convicted of a crime involving an indeterminate quantity of drugs, he must be sentenced under § 841(b)(1)(C). This provision mandates no minimum sentence; so pursuant to U.S.S.G. § 5G1.1(c), Guevara's sentence was required to fall within his Guideline range.

It appears that our conclusion aligns this Circuit on one side of a circuit split.

**B**

The only circuit (so far as we can tell) that has addressed the narrow issue presented in our case—i.e., where a defendant's sentence falls within the range of penalties authorized under the penal statute but exceeds the top of the applicable Guideline range based on a judge's finding of drug quantity by a preponderance—is *United States v. Harris,* 243 F.3d 806, 809 & n. 2 (4th Cir.), *cert. granted,* —— U.S. ——, 122 S.Ct. 663, 151 L.Ed.2d 578, 2001 WL 716327 (Dec. 10, 2001) (No. 00–10666, 2001 Term).

The defendant in *Harris* had been convicted of carrying a firearm in relation to drug trafficking under 18 U.S.C. § 924(c)(1)(A). 243 F.3d at 807. Upon

the district court's determination that Harris had "brandished" the firearm, he was sentenced to a mandatory minimum term of seven years under § 924(c)(1)(A)(ii), rather than the five year mandatory minimum sentence he otherwise would have received under § 924(c)(1)(A)(i). *Id.* The *Harris* court rejected the defendant's challenge to his sentence under *Apprendi* on the ground that *Apprendi* "only applies to sentences 'beyond the prescribed statutory maximum,'" *id.* at 809 (quoting *United States v. Pratt*, 239 F.3d 640 (4th Cir. 2001)), and § 924(c)(1)(A) contains no statutory maximum. Relevant to our case is the reference in the *Harris* opinion to the defendant's argument that, absent the district court's finding that he "brandished" the firearm, he most likely would not have received a sentence in excess of five years under the Sentencing Guidelines. Without mentioning Harris's applicable Guideline range, the court rejected his argument: "the relevant maximum under *Apprendi* is found on the face of the statute rather than in the Sentencing Guidelines." *Id.* at 809 n. 2 (internal quotation marks and citation omitted).

A number of circuits have articulated the broad rule that *Apprendi* is not implicated where a sentence falls within the maximum sentence prescribed in the applicable penal statute. Some courts have articulated this holding with respect to the federal narcotics statute, 21 U.S.C. § 841;[4] others in the context of different federal statutes with escalating penalties.[5] However, these cases have not recited facts to show that they faced the circumstances presented here: where the judge-made finding of fact results in a mandatory minimum that exceeds the top of the Guideline range. The procedural circumstance in which Guevara has been caught up is, relatively speaking, a rare bird. Thus, while these holdings could be read as contrary to our view, it also appears that they have not considered the precise issue that we must decide.

### C

The Sixth and Ninth Circuits are on the side of the circuit split with which we align ourselves. The Sixth Circuit evidently reaches the same result we do because it

---

**4.** *United States v. Williams*, 238 F.3d 871, 877 (7th Cir.2001) (holding that a defendant's sentence "is not violative of *Apprendi*, regardless of a district court's consideration of a mandatory minimum sentence," so long as the sentence is under the prescribed statutory maximum); *United States v. Williams*, 235 F.3d 858, 863 (3d Cir.2000) (same); *United States v. Doggett*, 230 F.3d 160, 164–166 (5th Cir. 2000), *cert. denied*, 531 U.S. 1177, 121 S.Ct. 1152, 148 L.Ed.2d 1014 (2001) (same); *Talbott v. Indiana*, 226 F.3d 866, 869–870 (7th Cir.2000) (same); *United States v. Aguayo–Delgado*, 220 F.3d 926, 933 (8th Cir.2000), *cert. denied*, 531 U.S. 1026, 121 S.Ct. 600, 148 L.Ed.2d 513 (2000) (same); *United States v. Sanchez*, 269 F.3d 1250, 1268–69 (11th Cir. 2001) (same); *United States v. Nealy*, 232 F.3d 825, 829 (11th Cir.2000) (same but finding error because defendant's sentence under § 841(b)(1)(B) exceeded the authorized maximum under § 841(b)(1)(C)).

**5.** *United States v. Pounds*, 230 F.3d 1317, 1319 (11th Cir.2000) (per curiam) (holding that *Apprendi* is inapplicable where the defendant, convicted under 18 U.S.C. § 924(c)(1)(A) for using and carrying a firearm in the commission of a crime of violence, received a ten year mandatory minimum sentence under § 924(c)(1)(A)(iii) based on the judge's finding that the firearm was discharged, rather than the five year mandatory minimum otherwise applicable, because any conviction under § 924(c)(1)(A) "carries with it a statutory maximum sentence of life imprisonment, regardless of what subsection the defendant is sentenced under"); *United States v. Smith*, 223 F.3d 554, 565–66 (7th Cir.2000), *petition for cert. filed*, (U.S. Nov. 14, 2000) (No. 00–7070), (U.S. Nov. 15, 2000) (No. 00–7021), (U.S. Nov. 15, 2000) (No. 00–7085).

holds that a defendant convicted of an offense under § 841(a) involving an indeterminate quantity of drugs must be sentenced under § 841(b)(1)(C) and in accordance with the Sentencing Guidelines. The Ninth Circuit adopts a broader principle than we are inclined to follow, and procedurally, is not on all fours with Guevara's case.[6]

In *United States v. Ramirez*, 242 F.3d 348 (6th Cir.2001), (rehearing en banc denied), the defendant was charged with conspiring to distribute cocaine and attempting to possess cocaine with the intent to distribute. Neither count specified drug quantity, and quantity was not an issue submitted to the jury. *Id.* at 350. At the sentencing, however, the district judge found that the conspiracy involved more than five kilograms of cocaine, and therefore sentenced the defendant (a prior drug felon) to a mandatory minimum sentence of 240 months under 21 U.S.C. § 841(b)(1)(A). *Id.* (The published opinion does not indicate Ramirez's applicable Guideline range.) The relevant statutory maximum under § 841(b)(1)(C) was 360 months, and Ramirez's actual sentence fell within this range.

Ramirez appealed, and the Sixth Circuit ruled that under *Apprendi*, the district judge's finding of drug quantity and imposition of a 240 month mandatory minimum sentence was impermissible:

[W]hen a defendant is found guilty of violating 21 U.S.C. § 841(a)(1), he must be sentenced under 21 U.S.C. § 841(b)(1)(C) unless the jury has found beyond a reasonable doubt that the defendant possessed the minimum amounts required by § 841(b)(1)(A) and § 841(b)(1)(B). *Because* in this case the government did not charge or attempt to *prove to the jury a quantity of drugs that would permit a mandatory sentence*, we remand this case to the District Court with instructions to sentence the defendant under 21 U.S.C. § 841(b)(1)(C) *and in accordance with the U.S. Sentencing Guidelines.*

*Id.* at 352 (emphasis added).

## D .

The idea that *Apprendi* is never implicated if a sentence falls within the maximum sentence prescribed in the applicable penal statute, although found persuasive (or spoken in dicta) by other courts, does not rest on Supreme Court precedent. True, *Apprendi* held that a fact that increases a penalty beyond the prescribed maximum must be found by a jury beyond a reasonable doubt, but *Apprendi* also held that "[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. *Apprendi* validated the sentencing judge's discretion to consider factors such as drug quantity for purposes of Guidelines calculations,[7] and at

---

**6.** *United States v. Garcia–Guizar*, 227 F.3d 1125 (9th Cir.2000) found a due process violation under *Apprendi* where the defendant's *potential* maximum sentence was increased—based on a judge's drug quantity finding—from the maximum authorized under § 841(b)(1)(C) to that authorized under § 841(b)(1)(A), regardless of the actual sentence imposed on the defendant. Since the defendant's sentence was within his Guideline range, however, he could not establish prejudice under the plain error analysis. *See id.* at 1129–30.

**7.** "We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." *Apprendi*, 530 U.S. at 481, 120 S.Ct. 2348. Indeed, most courts that have considered the constitutionality of the Sentencing Guidelines

the same time held that a legislature cannot remove from the jury facts that increase a defendant's sentence beyond the prescribed maximum. In so doing, *Apprendi* left room for the conclusion that once the Guideline range is calculated, facts that increase a defendant's sentence above this must be found by a jury. As the Sixth Circuit has stated:

> [T]here is a substantial difference in penalty based on drug quantities when a statute moves the penalty from a maximum penalty of 20 or 30 years or life to a mandatory minimum penalty of the same length because a life sentence 'is not mandatory under the latter provision.'

*Ramirez,* 242 F.3d at 351 (citing and quoting *United States v. Flowal,* 234 F.3d 932, 937 (6th Cir.2000)).

### E

Our holding does not invalidate statutory mandatory minimum sentences based on facts found by the judge under a preponderance standard. In *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), which the *Apprendi* court declined to overrule,[8] the Supreme Court considered a Pennsylvania statute that subjected a defendant to a mandatory minimum sentence of five years in prison if a judge found, by a preponderance of the evidence, that the defendant had visibly possessed a firearm during the commission of the underlying offense. 477 U.S. at 81, 106 S.Ct. 2411. The Court rejected petitioners' claims that the prosecution had to prove to the jury beyond a reasonable doubt that the defendant visibly possessed a firearm, and affirmed the holding below finding the statute constitutional. *Id.* at 84–91, 93, 106 S.Ct. 2411.

*McMillan* authorizes mandatory minimum sentences, but like *Apprendi, McMillan* arose under state law, without sentencing guidelines, so that the only range of penalties to which the defendants were exposed was the range in the penal statute. Because the mandatory minimum sentence of five years fell within that range, the defendants' sentences did not exceed the otherwise applicable prescribed range of penalties; the mandatory minimum "operate[d] solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it ..." *McMillan,* 477 U.S. at 87–88, 106 S.Ct. 2411.

In Guevara's case, the mandatory minimum term imposed by the district court *exceeded* the otherwise applicable range. Thus, our holding is consistent with *McMillan;* indeed, in limiting *McMillan* "to cases that do not involve the imposition of a sentence more severe than the statu-

---

under *Apprendi* have rejected the constitutional challenge. *See Thomas,* 274 F.3d at 662–63 (leaving intact judge's authority to determine facts relevant to Guideline range calculation); *United States v. Williams,* 235 F.3d 858, 863 (3d Cir.2000) (same); *United States v. Garcia,* 240 F.3d 180, 183 (2d Cir.2001) (same); *United States v. Breen,* 243 F.3d 591, 598–99 (2d Cir.2001) (same); *but see United States v. Norris,* 143 F.Supp.2d 243, 247 (E.D.N.Y.2001) (holding enhancements under Sentencing Guidelines unconstitutional based on findings made by a judge and not a jury).

This opinion therefore does not consider the ability of district judges to make findings under the Guidelines—including findings of drug quantity—by a preponderance standard, so long as that finding is not used to mandate a minimum in excess of the Guideline range. Nor does it limit the ability of district courts to make upward or downward departures.

8. *Apprendi,* 530 U.S. at 487 n. 13, 120 S.Ct. 2348 ("We do not overrule *McMillan.* We limit its holding to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict....").

tory maximum for the offense established by the jury's verdict," *Apprendi*, 530 U.S. at 487 n. 13, 120 S.Ct. 2348, the Supreme Court acknowledged the distinction on which we rely. Other "mandatory minimum" cases are distinguishable for the same reason, as demonstrated in the margin.[9]

## III

■ We review Guevara's challenge to his sentence for plain error pursuant to Fed.R.Civ.P. 52(b) since he failed to raise this objection below. *See Thomas*, 274 F.3d at 659. This requires Guevara to demonstrate "(1) error, (2) that is plain, and (3) that affect[s] substantial rights." *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)) (internal quotation marks omitted, alteration in original). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 467, 117 S.Ct. 1544 (quoting *Olano*, 507 U.S. at 732, 113 S.Ct. 1770) (internal quotation marks omitted, alteration in original).

## A

Guevara's indictment alleged that he committed acts constituting a violation of 841(b)(1)(A), but since the issue of drug quantity was explicitly taken away from the jury by the judge's charge, the jury did not convict Guevara of acts constituting a violation of 841(b)(1)(A). Rather, because drug quantity was not put to the jury, Guevara was found guilty of violating 841(b)(1)(C). Since Guevara was sentenced to 240 months in prison under 841(b)(1)(A) based on the district judge's drug quantity finding, however, Guevara's sentence was 30 months greater than the maximum sentence he otherwise could have received, thus constituting error.

## B

■ An error is "plain" if it is "clear" or "obvious" at the time of appellate consideration. *Johnson*, 520 U.S. at 467–68, 117 S.Ct. 1544. An error is clear if the "law at the time of trial was settled and clearly contrary to the law at the time of appeal." *Johnson*, 520 U.S. at 468, 117 S.Ct. 1544.

■ We conclude that the error was plain in light of (1) *Apprendi*, (2) opinions in this Circuit and others concluding that specific threshold drug quantities are elements of the offense that must be proved beyond a reasonable doubt in order for a defendant's sentence to exceed the prescribed statutory maximum to which he would otherwise be exposed, (3) the conclusion reached in the Sixth Circuit and the appeal in this case that Guevara must be sentenced under the provision for which

9. *See, e.g., United States v. Aguayo–Delgado*, 220 F.3d 926 (8th Cir.2000) (defendant's sentence to 240 months under the mandatory minimum prescribed in § 841(b)(1)(A) did not exceed the range of penalties to which he was otherwise exposed, for his Guideline range was 235 to 293 months); *United States v. Doggett*, 230 F.3d 160, 165–66 (5th Cir.2000) (applicability of mandatory minimum under § 841(b)(1)(A) based on judge's finding of drug quantity did not exceed range of penalties to which the defendant was otherwise exposed, because the defendant's Guideline range was 188 to 235 months and sentence was 235 months); *United States v. Williams*, 238 F.3d 871, 874, 877 (7th Cir.2001) (same, where defendant's actual sentence was 151 months and his Guideline range was 151 to 188 months).

he was convicted, and (4) our conclusion that Guevara's sentence cannot exceed the top of his Guideline range based on a judge's finding by a preponderance.

## C

■■■ To show that the plain error impaired his substantial rights, Guevara must establish prejudice that "affected the outcome of the district court proceedings." *United States v. Gore*, 154 F.3d 34, 47 (2d Cir.1998).[10]

■■■ More or less as in *Thomas*, the error in this case is the incongruency between the crime found by the jury (§ 841(b)(1)(C)) and the crime for which Guevara was sentenced (§ 841(b)(1)(A)). *Thomas*, 274 F.3d at 668. As the *Thomas* en banc determined, the consequence of this error can be viewed either as a sentencing error (i.e., that Guevara was sentenced to a penalty greater than the one authorized by Congress for the crime of which he was convicted) or as a defective conviction (because the crime of conviction, § 841(b)(1)(A), was not found by the jury). *Id.*, 274 F.3d at 668. We, like the *Thomas* court, decline to resolve this issue because under either view Guevara has demonstrated that the error affected his substantial rights. *Id.*, 274 F.3d at 668.

If the error is a sentencing error, the prejudice is clear. The facts found by a jury supported a penalty under § 841(b)(1)(C) and upon calculation of his Guideline range, Guevara faced a sentence of 168 to 210 months. Instead, he was sentenced to 240 months under § 841(b)(1)(A), 30 months more than the applicable maximum.

If we consider that the error inhered in the conviction, the proceedings below were defective because the jury was not permitted to make a finding of an essential element of the crime (drug quantity), *see id.*, 274 F.3d at 669, i.e., the district judge "constructively amended" the indictment as follows. In charging the jury that drug quantity was not an element of the offense and need not be proven, the court created "a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. Delano*, 55 F.3d 720, 729 (2d Cir.1995) (quoting *United States v. Mollica*, 849 F.2d 723, 729 (2d Cir.1988) (internal quotation marks omitted)). "A constructive amendment is a *per se* prejudicial violation of the Grand Jury Clause of the Constitution." *Thomas*, 274 F.3d at 669; *United States v. Frank*, 156 F.3d 332, 338 n. 5 (2d Cir.1998). Thus, viewed either as a sentencing error or a conviction error, Guevara has demonstrated prejudice.

10. In most plain error prejudice cases, the defendant rather than the government bears the burden of persuasion. *Gore*, 154 F.3d at 47. As this Court just pointed out, "[w]hen, as here, the source of the alleged error is a supervening judicial decision that alters 'a settled rule of law in the circuit,' we have in the past applied a 'modified plain error rule' in which the Government bears the burden of persuasion as to whether substantial rights have been affected." *Thomas*, 274 F.3d at 668 n. 15 (internal citations omitted). While a question has been raised whether *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), implicitly overruled the modified plain error approach, *see Thomas*, 274 F.3d at 668 n. 15, we, like the *Thomas* court, need not resolve this because Guevara prevails under ordinary plain error review.

### D

■ Having satisfied the first three prongs of *Olano,* we must now determine whether to exercise our discretion to notice the plain error, which we may do if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano,* 507 U.S. at 736, 113 S.Ct. 1770.

We conclude that in this case, the error sufficiently affected the fairness of the judicial proceedings. Guevara challenged whether the government had met its burden of proving by a preponderance of the evidence that more than one kilogram of heroin was involved the offense. As *Thomas* stated, "[i]t is self-evident that a district court's decision to use the preponderance-of-the-evidence standard to determine drug quantity rather than a more exacting standard would have the natural and probable effect of discouraging defense counsel from vigorously contesting quantity in at least some cases." *Thomas,* 274 F.3d at 671. Guevara's objection to the sufficiency of the evidence "demonstrates that he was prepared to contest quantity [and type], and raises the question of whether the error in this case might have discouraged [Guevara's] counsel from vigorously cross-examining the Government's witnesses at trial regarding drug quantity [and type]." *Id.*

Also, Guevara's sentence, which exceeded by thirty months the maximum sentence he otherwise could have received for the crime of which he was convicted, may not undermine the public reputation of the judicial system, but certainly it is not easy to justify or explain why a conscientious court would not correct such an error on direct review.

For these reasons, and others, we exercise our discretion to address the plain error. Accordingly, we vacate Guevara's sentence and remand for resentencing pursuant to 21 U.S.C. § 841(b)(1)(C) and his applicable Guideline range, in a manner consistent with this opinion. *Id.,* 274 F.3d at 671–72 (explaining appropriateness of this remedy where error is either in conviction or in sentence).

### IV

■ Finally, we address Guevara's remaining claims. First, Guevara challenges the sufficiency of the evidence to support the district judge's determination that the conspiracy involved more than one kilogram of heroin. Because of our holding on the *Apprendi* issue, we review this claim only insofar as it affects the calculation of Guevara's base offense level, which the court fixed at 32 pursuant to U.S.S.G. § 2D1.1(c)(4). A drug quantity exceeding one kilogram is sufficient to support this offense level, regardless of the district court's ultimate finding that more than two kilograms of heroin was involved. *See United States v. Frondle,* 918 F.2d 62, 65 (8th Cir.1990) ("Any error in the attribution of drug quantities is harmless error when the underlying base offense level would remain the same.").

■ "The district court has broad discretion to consider all relevant information when making a finding concerning quantity of drugs involved [in an offense]," *United States v. Pico,* 2 F.3d 472, 475 (2d Cir.1993), and the judge's drug quantity finding is reviewed only for "clear error." *See United States v. Thompson,* 76 F.3d 442, 456 (2d Cir.1996) (quoting 18 U.S.C. § 3742(e)).

The evidence at trial established that Jazmin Zamora, a Colombian woman, contacted Sergio Delvasto, a paid government informant working for the United States Drug Enforcement Agency ("DEA") in Co-

lombia, and hired Delvasto to transport 1,600 grams of heroin to New York. Zamora gave Delvasto luggage containing 133 wax pellets and four packets. Delvasto turned over the pellets and packets to a Colombian police officer. The contents of one pellet were tested and determined to be approximately two or three grams of heroin, indicating that the total weight of the heroin contained in the pellets was approximately 266 to 399 grams. The case agent testified that Zamora had told Delvasto that each of the packets contained approximately 300 grams of heroin, and three of the four packets, which were similar in size, bore markings indicating that they contained over 300 grams of heroin. The gross weight of the pellets, including the wax covering, and the heroin contained in the four packets was 2,253 grams. Also, according to the Colombian police officer, mules—people who ingest wax pellets for smuggling purposes—typically carry between 900 and 1,100 grams of heroin per trip.

This evidence is more than sufficient to support a finding that more than one kilogram of heroin was involved in the conspiracy. Because we see no clear error, we deny Guevara's claim.

Second, Guevara claims that the district court improperly excluded exculpatory transcripts of six tape-recorded conversations between Guevara, Zamora, and Delvasto, who arranged with Zamora to transport the heroin from Colombia to the United States where he would deliver it to a person referred to as "Santa." The conversations at issue took place after Guevara was arrested and while he was allegedly attempting to cooperate with the authorities against his alleged co-conspirators.

Guevara hoped that these statements would show that he "was merely used by drug dealers to pick up a man and to bring him to Queens County," and that he was not, as the government asserted, one Santa, the man designated to receive the drugs in New York. He also sought to admit them to refute the damaging testimony of Special Agent Michael Guidetti on cross-examination, that although Guidetti believed Guevara was being cooperative when he placed the telephone calls to Zamora, Guidetti's review of the transcripts suggested to him that Guevara was "trying to tip off" Zamora and the other parties to the conversations.

The relevant transcript provisions were in the second, third, and sixth of the taped conversations. The second call was placed by Guevara to Zamora on 5:40 p.m. of the day of Guevara's arrest. Guevara told Zamora that he had picked up Delvasto and Zamora responded, "Oh, I see. So what's up?" Guevara stated that he did not know where to take Delvasto, to which Zamora responded, "Huh?" After Guevara repeated himself, Zamora told Guevara to put Delvasto on the telephone or have him call her directly, and then she hung up. In the third call (made the same day at 5:45 p.m. by Delvasto to Zamora) Zamora said that the person who had previously called was not Santa but Zamora wished to speak with that person again. Guevara got on the telephone and repeated that he did not know where to go or whom to call to get payment for Delvasto. He asked how to find the real Santa and said this was "a sensitive matter." Zamora then asked to speak with Delvasto, whom she accused: "You're with the Feds, brother." Delvasto asked Zamora to "handle" the situation and the call ended. In the fifth call, occurring at 6:10 p.m., Zamora told Delvasto that Guevara was either "a thief, or he's a Fed," and she asked Delvasto to try to get "the merchandise" back from Guevara.

When Guevara proffered the post-arrest tapes, after Guidetti had testified, the gov-

ernment objected on hearsay grounds. Without responding to that objection, defense counsel argued that the evidence was exculpatory because of Zamora's statement that Guevara was not Santa. The district court sustained the objection but undertook to reconsider later. Then, when Delvasto testified and defense counsel attempted to question him about these calls, the district court cut off this line of questioning based on its previous ruling.

After the government concluded its evidence, Guevara asserted that Zamora's statements to Guevara and Delvasto were admissible either as "excited utterances" under Fed.R.Evid. 803(1), as "present sense impressions" under Fed.R.Evid. 803(2), or, alternatively under Fed.R.Evid. 807, the residual hearsay exception. The district court rejected these arguments.

 We review a district court's decision to exclude certain tape recordings and transcripts for an abuse of discretion. *See United States v. Moskowitz*, 215 F.3d 265, 268 (2d Cir.2000); *United States v. Tocco*, 135 F.3d 116, 127 (2d Cir.1998). The district court did not abuse its discretion under Rule 803. The court's determination that Zamora's statements did not constitute "present sense impressions" or "excited utterances" because they were conclusions based upon information she had processed rather than contemporaneous or spontaneous statements that were inherently trustworthy, was neither arbitrary nor irrational. *See United States v. Pipola*, 83 F.3d 556, 566 (2d Cir.1996).

 Guevara also argues that Zamora's statements to Delvasto were admissible under Rule 106, which provides:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part of any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Fed.R.Evid. 106. This argument is baseless, because Rule 106 does not "render admissible evidence that is otherwise inadmissible," *United States v. Terry*, 702 F.2d 299, 314 (2d Cir.1983), and Guevara has not demonstrated how these hearsay statements are otherwise admissible.

We have considered Guevara's other arguments regarding the district court's evidentiary rulings and find them to lack merit.

Finally, Guevara contends that he was denied his Sixth Amendment right to the effective assistance of counsel when his lawyer stipulated to the accuracy of the side-by-side Spanish transcript and English translation, before Guevara had the opportunity to listen to the original tapes.

 This claim is reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant claiming ineffective assistance of counsel must demonstrate that (1) counsel's conduct "fell below an objective standard of reasonableness," and (2) this incompetence caused prejudice to the defendant. *Id.* at 687–88, 104 S.Ct. 2052. A lawyer is presumed to be competent, and "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Prejudice under *Strickland* requires a showing by the defendant that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

 We need not consider whether Guevara's purported failure to listen to the tapes before trial is attributable to counsel's unreasonable conduct, because Gue-

vara has not demonstrated *Strickland* prejudice. Guevara argues that the transcripts of the tapes were "altered," but his brief on appeal acknowledges that the record does not reflect any alleged alterations; he merely asserts in a conclusory fashion that "the transcripts introduced at trial are wholly inaccurate to his detriment." This is insufficient to demonstrate the reasonable probability that Guevara would have been acquitted if he had known of the alleged alterations prior to trial. Indeed, he conceded that "this Court cannot really determine what difference it would have made in this case if counsel had given the tapes to his client before trial." Defendant–Appellant's Brief on Appeal, at 36.

### CONCLUSION

For the reasons set forth herein, Guevara's sentence is AFFIRMED IN PART, VACATED IN PART, AND REMANDED to the district court for further proceedings consistent with this opinion.