**UNITED STATES of America,**
**Appellee,**

v.

**Jorge GUEVARA, aka "Santa,"**
**Defendant–Appellant.**

**Docket No. 00–1133.**

United States Court of Appeals,
Second Circuit.

Filed: Dec. 18, 2001.

Order Denying Rehearing:
April 12, 2002.

On Reconsideration of Petition for
Rehearing: July 26, 2002.

Timothy J. Coleman, Assistant United States Attorney, New York, N.Y. (Mary Jo White, United States Attorney for the Southern District of New York, Christine H. Chung, Assistant United States Attorney, on the brief), for Appellee.

Richard D. Willstatter, Green & Willstatter, White Plains, NY, for Defendant–Appellant.

Before: JACOBS, CALABRESI, Circuit Judges, RAKOFF, District Judge.*

JACOBS, Circuit Judge.

Our opinion deciding this appeal, dated December 18, 2001, held that: [1] "by virtue of *Apprendi* [*v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ], a statutory mandatory minimum sentence specified in either [21 U.S.C.] § 841(b)(1)(A) or § 841(b)(1)(B) cannot mandate a prison sentence that exceeds the highest sentence to which the defendant would otherwise have been exposed (i.e., the top of the federal Guideline range, based on district court findings under the Guidelines, with or without a departure) if the applicability of subsections (A) or (B) depends on a finding of drug quantity not made by the jury;" and [2] under *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), there was plain error that seriously "affected the fairness of the judicial proceedings." *United States v. Guevara,* 277 F.3d 111, 118, 123–25.

The government petitioned for rehearing, challenging both holdings and arguing, *inter alia,* that pursuant to *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) and *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), this Court should have

---

* The Honorable Jed S. Rakoff of the United States District Court for the Southern District of New York, sitting by designation.

undertaken to review the trial evidence and "consider whether a properly instructed jury would have found the relevant fact—here, that Guevara's offense involved at least one kilogram of heroin." Gov't Brief in Support of Petition, 32. On April 12, 2002, we denied rehearing in an order observing that the Supreme Court in *Apprendi* "did not undertake a *Neder* analysis. Nor did our *in banc* opinion in *United States v. Thomas,* 274 F.3d 655 (2d Cir. 2001)." *United States v. Guevara,* 298 F.3d 182 (2d Cir.2002). We concluded that "in the circumstances presented in this case as well, *Neder* does not control." *Id.* We stayed the mandate, however, pending disposition of two cases taken up by the Supreme Court that had likely bearing on the outcome of this appeal, and which have now been decided: July 26, 2002 *Harris v. United States,* —— U.S. ——, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), and *United States v. Cotton,* —— U.S. ——, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002).

After the Supreme Court spoke, this Court *sua sponte* directed the parties to brief the impact, if any, of the new Supreme Court authority. Having reviewed these submissions, we now reconsider the denial of the government's petition for rehearing, and grant rehearing.

Upon rehearing, we conclude that for reasons evident in *Cotton* and set forth below, defendant-appellant Guevara cannot establish that any error seriously affected the fairness of judicial proceedings within the meaning of *Olano.* We therefore alter the terms of our mandate and affirm the judgment of the district court. That done, we have no occasion to revisit the other holding of *Guevara.*

## I

█ Pursuant to Rule 52(b) of the Federal Rules of Criminal Procedure, "be-fore an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson,* 520 U.S. at 466–67, 117 S.Ct. 1544 (quoting *Olano,* 507 U.S. at 732, 113 S.Ct. 1770). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at 467, 117 S.Ct. 1544 (internal quotation marks omitted) (quoting *Olano,* 507 U.S. at 732, 113 S.Ct. 1770).

In *Johnson,* the Supreme Court used *Olano's* plain error analysis to decide whether the trial court's failure to instruct the jury on the element of materiality—an *Apprendi*-type error—should be corrected, and ruled that the error did not "seriously affect the fairness, integrity, or public reputation of judicial proceedings" because the evidence on the omitted element of materiality was "overwhelming" and "essentially uncontroverted at trial." *Id.* at 469–470, 117 S.Ct. 1544. In applying the *Olano* test to the *Apprendi* error in Guevara's sentence, we did not believe that the weight of the trial evidence, under *Johnson* and *Neder,* had bearing on the fairness of the proceedings, because the *Apprendi* Court did not look to weight of the trial evidence on the omitted element. (In *Neder,* the Supreme Court concluded that a trial court's error in failing to elicit a jury finding as to the element of materiality was subject to review for harmless error, which analysis in turn depended on the weight of the trial evidence regarding the omitted element. *Neder,* 527 U.S. at 15, 119 S.Ct. 1827.) We are now convinced otherwise.

█ *Cotton* establishes that where an *Apprendi* error is recognized and plain error analysis applies, the reviewing court must consider the weight of trial evidence

bearing on the omitted element; and if such evidence is "overwhelming" and "essentially uncontroverted," there is "no basis for concluding that the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Cotton,* — U.S. at —, 122 S.Ct. at 1786 (quoting *Johnson,* 520 U.S. at 470, 117 S.Ct. 1544). According to the Supreme Court, "[t]he real threat then to the 'fairness, integrity, and public reputation of judicial proceedings' would be if [the defendant], despite the overwhelming and uncontroverted evidence that [he was] involved in a vast drug conspiracy, [was] to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial." *Id.* at 1787. Guevara argues that this view is impliedly limited to cases in which the drug conspiracy is "vast." We disagree. Fairly read, this passage does not limit the scope of *Cotton's* holding to drug conspiracies, let alone just those deemed "vast": it suggests that the judicial process is not subverted when an error that, if corrected, would vacate an outcome compelled by the evidence and result in an outcome incompatible with the evidence, goes uncorrected.

## II

The error identified in *Guevara* was that the defendant received a sentence thirty months greater than the maximum sentence he otherwise could have received, based on a finding of drug quantity made by the district court at sentencing rather than by the jury. *Guevara,* 277 F.3d at 123. The threshold drug quantity required to support the sentence imposed on Guevara was one kilogram of heroin. 21 U.S.C. § 841(b)(1)(A)(i). We therefore look to the weight of evidence on drug quantity.

As recounted in our December 18, 2001 opinion:

The evidence at trial established that Jazmin Zamora, a Colombian woman, contacted Sergio Delvasto, a paid government informant working for the United States Drug Enforcement Agency ("DEA") in Colombia, and hired Delvasto to transport 1,600 grams of heroin to New York. Zamora gave Delvasto luggage containing 133 wax pellets and four packets. Delvasto turned over the pellets and packets to a Colombian police officer. The contents of one pellet were tested and determined to be approximately two or three grams of heroin, indicating that the total weight of the heroin contained in the pellets was approximately 266 to 399 grams. The case agent testified that Zamora had told Delvasto that each of the packets contained approximately 300 grams of heroin, and three of the four packets, which were similar in size, bore markings indicating that they contained over 300 grams of heroin. The gross weight of the pellets, including the wax covering, and the heroin contained in the four packets was 2,253 grams. Also, according to the Colombian police officer, mules—people who ingest wax pellets for smuggling purposes—typically carry between 900 and 1,100 grams of heroin per trip.

*Guevara,* 277 F.3d at 125–26. We have already held that this evidence was sufficient to support the district court's finding by a preponderance of the evidence "that more than one kilogram of heroin was involved in the conspiracy." *Id.* at 126. Upon further consideration, we conclude that the evidence that the conspiracy involved more than one kilogram of heroin was overwhelming.

Having ascertained that the evidence of drug quantity was "overwhelming," we need to consider next whether it was "es-

sentially uncontroverted." *Cotton,* —— U.S. at ——, 122 S.Ct. at 1786. Guevara argued at sentencing that he was not criminally responsible for more than one kilogram of heroin and that the evidence did not support a finding of this quantity. However, even if, as here, "the evidence supporting the omitted element was controverted," we must "conduct a two-part inquiry, searching the record in order to determine (a) whether there was sufficient evidence to permit a jury to find in favor of the defendant on the omitted element, and, if there was, (b) whether the jury would nonetheless have returned the same verdict of guilty." *United States v. Jackson,* 196 F.3d 383, 386 (2d Cir.1999) (reviewing the failure to submit an element of an offense to the jury for harmless error pursuant to Fed.R.Crim.P. 52(a), a standard more lenient to the defendant that applies where the defendant objected below). Having searched the record, we see insufficient evidence to support a jury finding that the conspiracy did not involve more than one kilogram of heroin; the jury, having found that the conspiracy existed, would have returned a verdict that it involved more than one kilogram of heroin.

\* \* \*

Upon reconsideration, we conclude that the error in Guevara's case did not "affect the fairness of the judicial proceedings," and that we lack discretion to correct the *Apprendi* error identified in our December 18, 2001 opinion. Accordingly, we do not consider the impact (if any) of *Harris* on the *Apprendi* analysis set out in that opinion.

## CONCLUSION

For the reasons set forth herein, the judgment of the district court is affirmed.